UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
GRANT F. SMITH,                )
                               )
     Plaintiff,                )
                               )
v.                             )   Civil Action No. 1:15-cv-01431
                               )
CENTRAL INTELLIGENCE           )
AGENCY,                        )
                               )
     Defendant.                )
_____)
```

**DECLARATION OF ANTOINETTE B. SHINER, INFORMATION REVIEW OFFICER
FOR THE LITIGATION INFORMATION REVIEW OFFICE
CENTRAL INTELLIGENCE AGENCY**

I, ANTOINETTE B. SHINER, hereby declare and state:

I. **INTRODUCTION**

1. I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency"). Although I only recently assumed this position,[1] I have worked in the information review and release field since 2000.

2. Prior to becoming the IRO for LIRO, I served as the IRO for the Directorate of Support ("DS") for over sixteen months. In that capacity, I was responsible for making classification and release determinations for information

---

[1] I became the IRO for LIRO effective 19 January 2016.

originating within the DS. Prior to that, I was the Deputy IRO for the Director's Area of the CIA ("DIR Area") for over three years. In that role, I was responsible for making classification and release determinations for information originating within the DIR Area. Before assuming that role, I was a reviewer in the DS for seven months, where I performed research and provided input and recommendations on classification and release decisions. Prior to that position, I worked in the Public Information Program Division ("PIPD") within the Information Management Services ("IMS") Group for over ten years engaged in all aspects of FOIA case management. Before transitioning to the area of information review and release, I worked as a paralegal and held various administrative positions within the Office of General Counsel for over thirteen years.

3. I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) (discussed in further detail below). This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

4. Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

5. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity. I am submitting this declaration in support of the CIA's motion for summary judgment filed by the Department of Justice in this proceeding.

6. The purpose of this declaration is to explain and justify, to the greatest extent possible on the public record, the CIA's actions in responding to Plaintiff's FOIA request. For the Court's convenience, I have divided the remainder of this declaration into four parts. Part II summarizes Plaintiff's FOIA request and the CIA's response in this case. Part III discusses the CIA's response that it can neither confirm nor deny the existence or nonexistence of records responsive to Plaintiff's request, which is commonly referred to

as a "Glomar" response.[2] Part IV explains the application of FOIA exemptions to Plaintiff's request. Part V is the conclusion.

## II. PLAINTIFF'S FOIA REQUEST

7. By letter dated 19 March 2015, Plaintiff Grant F. Smith submitted a FOIA request to the CIA Information and Privacy Coordinator, requesting "a copy of the intelligence budget that pertains to line items support Israel."

8. By letter dated 15 April 2015, the CIA notified Plaintiff:

> In accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended, and section 102A(i)(1) of the National Security Act of 1947, as amended. Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3).

9. By letter dated 5 May 2015, Plaintiff appealed the CIA's denial of his FOIA request. Plaintiff cited Congressional testimony of former Director of Central Intelligence John Deutch from 1996, in which he said that the disclosure of the annual amount appropriated for intelligence purposes would inform the public and not, in itself, harm intelligence activities.

---

[2] The "Glomar" term comes from the case Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which upheld the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning CIA's reported contacts with the media regarding Howard Hughes's ship, the "Hughes Glomar Explorer."

10. By letter dated 15 May 2015, the CIA indicated that it had received Plaintiff's appeal, and informed him that he would be advised of the Agency Release Panel's determination.

11. On 2 September 2015, Plaintiff filed the instant action. The Agency Release Panel did not respond to Plaintiff's appeal before the action was filed.

### III. THE CIA'S GLOMAR DETERMINATION

12. As indicated above, the CIA's response to Plaintiff's FOIA request - neither confirming nor denying the existence or nonexistence of records - is commonly referred to as a Glomar response. Such a response is provided for under Executive Order 13526, Section 3.6(a): "An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." Plaintiff's FOIA request is just such a narrow circumstance, wherein the mere confirmation or denial of the existence of responsive records would reveal a classified fact - namely, whether CIA has intelligence budget line items supporting Israel.

13. The CIA is charged with carrying out a number of important functions on behalf of the United States, which include, among other activities, collecting and analyzing foreign intelligence and counterintelligence. A defining characteristic of the CIA's intelligence activities is that they

are typically carried out through clandestine means, and therefore they must remain secret in order to be effective. In the context of FOIA, this means that the CIA must carefully evaluate whether its response to a particular FOIA request could jeopardize the clandestine nature of its intelligence activities or otherwise reveal previously undisclosed information about its sources, capabilities, authorities, interests, strengths, weaknesses, or resources.

14. In a typical scenario, a FOIA requester submits a request to the CIA for information on a particular subject and the CIA conducts a search of non-exempt records. If records are located, the CIA provides the requester with those non-exempt records or reasonably segregable non-exempt portions of records. In this typical circumstance, the CIA's response – either to provide or not provide the records sought – actually confirms the existence or nonexistence of CIA records on the subject of the request. Typically, such confirmation poses no harm to the national security because the response focuses on releasing or withholding specific substantive information contained within the records. In those circumstances, the fact that the CIA possesses or does not possess responsive records is not itself a classified fact, although the information contained within the records may be classified.

15. In other cases, however, the mere confirmation or denial of the existence of responsive records would in itself reveal a classified fact: specifically, whether the CIA has an intelligence interest in or clandestine connection to a particular individual or activity. In those cases, the CIA asserts a Glomar response because the existence or nonexistence of CIA records responsive to the request is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security.

16. To illustrate, consider a FOIA request for all records within the CIA's possession regarding a specific clandestine technology. The CIA's acknowledgement of responsive records, even if the CIA withheld the records pursuant to a FOIA exemption, would reveal that the CIA has an interest in this clandestine technology and may be employing the technology. Moreover, if CIA were required to provide information about the number and nature of the responsive records it withheld (including the dates, authors, recipients, and general subject matter of each record), as is typically required in FOIA litigation, the CIA's response would reveal additional information about the depth and breadth of the CIA's interest in or use of that technology.

17. Conversely, if the CIA were to confirm that no responsive records existed, that fact would itself be revealing,

tending to reveal that the CIA does not have an interest in or is not able to use the technology at issue. That fact could be extremely valuable to the targets of CIA intelligence efforts, who could carry out their activities with the knowledge that the CIA would be unable to monitor their activities using that particular technology.

18. In short, to be credible and effective, the CIA must use the Glomar response consistently in all cases where the existence or nonexistence of records responsive to a FOIA request is a classified fact, including instances in which the CIA does not possess records responsive to a particular request. If the CIA were to invoke a Glomar response only when it actually possessed responsive records, the Glomar response would be interpreted as an admission that responsive records exist. This practice would reveal the very information that the CIA must protect in the interest of national security.

19. After careful review, I have determined that if the CIA were to confirm the existence of records responsive to Plaintiff's FOIA request, such confirmation would indicate that the CIA had intelligence budget line items supporting Israel. On the other hand, if the CIA were to respond by admitting that it did not possess any responsive records, it would suggest that the CIA did not have intelligence budget line items supporting Israel. As explained below, either confirmation would reveal

sensitive information about the CIA's intelligence sources and methods that is protected from disclosure by Executive Order 13526 and statute. Therefore, the CIA asserted a Glomar response to Plaintiff's request because the existence or nonexistence of responsive CIA records responsive to Plaintiff's request is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security.

## IV. APPLICATION OF FOIA EXEMPTIONS

### A. FOIA Exemption (b)(1)

20. FOIA exemption (b)(1) provides that FOIA does not require the production of records that are: "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

21. Section 1.1(a) of Executive Order 13526 provides that information may be originally classified under the terms of this order only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in Section 1.4 of Executive Order 13526; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.

22. Pursuant to a written delegation of authority in accordance with Executive Order 13526, I hold original classification authority at the TOP SECRET level. Therefore, I am authorized to conduct classification reviews and to make original classification decisions. I have determined that the existence or nonexistence of the requested records is currently and properly classified.

23. Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526, and as described below, I have determined that the existence or nonexistence of the requested records in this case is a properly classified fact that concerns "intelligence activities" and "intelligence sources and methods" under section 1.4(c) of the Executive Order, as well as "foreign relations or foreign activities of the United States" under Section 1.4 (d) of the Order; the records are owned by and under the control of the U.S. Government; and the unauthorized disclosure of the existence or nonexistence of the requested records reasonably could be expected to result in damage to national security.

24. My determination that the existence or nonexistence of the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

25. Merely acknowledging that the CIA possesses records responsive to Plaintiff's FOIA request would reveal that the CIA had intelligence budget line items supporting Israel. On the other hand, acknowledging the absence of such records would suggest that CIA did not have intelligence budget line items supporting Israel. In either case, such an admission would implicate intelligence sources and methods in a manner harmful to U.S. national security because it would reveal to Plaintiff and the public facts about the CIA's clandestine intelligence activities, as explained below. That disclosure reasonably could be expected to cause damage to the national security. Thus, this information is currently and properly classified, and consequently, it is exempt from disclosure under FOIA exemption (b)(1).

**B. Damage to National Security**

26. Clandestine intelligence activities lie at the heart of the CIA's mission. As previously described, an

acknowledgment of information regarding specific intelligence activities can reveal the CIA's specific intelligence capabilities, authorities, interests, and resources. Terrorist organizations, foreign intelligence services, and other hostile groups use this information to thwart CIA activities and attack the United States and its interests. These parties search continually for information regarding the activities of the CIA and are able to gather information from myriad sources, analyze this information, and devise ways to defeat CIA activities from seemingly disparate pieces of information.

27. Disclosure of information about intelligence expenditures could reasonably be expected to harm national security because it would reveal capabilities, activities, and intelligence priorities of the U.S. Government, which in turn could inhibit intelligence gathering. Disclosure of specific intelligence expenditures would show the funding devoted to certain activities, or the lack of funding devoted to certain activities, which in turn would reveal the resources available to the intelligence community and the intelligence priorities of the U.S. Government.

28. Our adversaries can gain useful information about U.S. intelligence programs and activities from budget figures. Information about intelligence budgets has been and continues to be of great interest to foreign nations and hostile groups

wishing to calculate the strengths and weakness of the United States. Foreign governments and groups also have been and continue to be keenly interested in U.S. intelligence priorities. Nowhere have these priorities been better reflected than in the spending on particular intelligence activities. Combined with other information already available to foreign intelligence services and the public, the release of intelligence budget information would tend to reveal intelligence activities, priorities, vulnerabilities, and strengths.

29. Furthermore, disclosure of information about intelligence expenditures could reasonably be expected to damage relationships between the U.S. Government and foreign governments and could negatively impact the CIA's ability to work collaboratively with these countries on other areas of concern. Foreign intelligence liaison relationships constitute both an intelligence source and an intelligence method, and thus must be protected as such. The CIA relies on foreign intelligence liaison relationships for intelligence-gathering and assistance critical to U.S. national security. One of the major functions of the CIA is to gather intelligence from around the world that can be used by the President and other government officials in making important decisions. Disclosure of the Agency's relationship with or assistance to a specific country

13

would suggest to other foreign liaison services and foreign government officials that have relationships with the Agency that the U.S. Government is unable or unwilling to protect the secrecy of such relationships and assistance. Such a perception could cause foreign liaison services and foreign governments to curtail their provision of information or other assistance to the Agency, or to end the relationship altogether, which would impair the Agency's ability to collect intelligence and conduct intelligence activities of importance to U.S. national security.

30. If the CIA were to provide responses either confirming or denying that it possesses records revealing intelligence budget line items supporting Israel, this admission could identify the CIA's intelligence sources, methods, and activities. Such responses, therefore, reasonably could be expected to cause damage to U.S. national security. The potential damage to national security would be magnified many times over if the CIA were to respond to all FOIA requests for information on intelligence budget line items, thereby revealing - piece by piece - intelligence community resources, activities, and priorities.

### C. FOIA Exemption (b)(3)

31. FOIA exemption (b)(3) provides that FOIA does not apply to matters that are:

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . .

5 U.S.C. § 552(b)(3).

32. Section 102A(i)(1) of the National Security Act of 1947, as amended, 40 U.S.C. § 3024(i)(1) (the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." Accordingly, the National Security Act constitutes a federal statute which "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). Under the direction of the DNI pursuant to section 102A, and consistent with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.[3] As demonstrated in Parts III and IV of this Declaration, acknowledging the existence or nonexistence of records reflecting a classified connection to the CIA would

---

[3] Section 1.6(d) of Executive Order 12333, as amended, 3 C.F.R. 200 (1981), *reprinted in* 50 U.S.C.A. § 401 note at 25 (West Supp. 2009), and as amended by Executive Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008) requires the Director of the Central Intelligence Agency to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure in accordance with guidance from the [DNI][.]"

reveal information that concerns intelligence sources and methods, which the National Security Act is designed to protect.

33. Accordingly, the fact of the existence or nonexistence of records that would reflect intelligence budget line items supporting Israel is exempt from disclosure under FOIA exemption (b)(3) pursuant to the National Security Act. In contrast to Executive Order 13526, this statute does not require the CIA to identify and describe the damage to the national security that reasonably could be expected to result should the CIA confirm or deny the existence or nonexistence of the records. Nonetheless, I refer the Court to the paragraphs above for a description of the damage to the national security should anything other than a Glomar response be provided by the CIA in this case. FOIA exemptions (b)(1) and (b)(3) thus apply independently and co-extensively to Plaintiff's FOIA request about Mr. Davis.

## V. CONCLUSION

34. Acknowledgement of the existence or nonexistence of CIA records of intelligence budget line items supporting Israel, would reveal classified information implicating intelligence sources, methods, and activities. Therefore, I have determined that the only appropriate response is for the CIA to neither confirm nor deny the existence or nonexistence of the requested records under FOIA exemptions (b)(1) and (b)(3).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of February, 2016.

*Antoinette B. Shiner* (signature)
Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency