**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GRANT F. SMITH,

        Plaintiff,

  v.

CENTRAL INTELLIGENCE AGENCY,

        Defendant.

Case No.: 1:15-cv-01431 (TSC)

Electronically Filed

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The Central Intelligence Agency (the "CIA" or "the Agency") properly issued a *Glomar* response to Plaintiff's Freedom of Information Act ("FOIA") request for a copy of intelligence budget line items supporting Israel, neither confirming nor denying the existence of such records. In its opening brief, the CIA provided a declaration detailing why this response was proper under FOIA Exemptions 1 and 3. It also explained why its *Glomar* response was in keeping with decades of well-established Supreme Court and D.C. Circuit case law.

Plaintiff, in his opposition brief, does not challenge the applicability of Exemptions 1 and 3 or the adequacy of the Agency's supporting declaration. Instead, he argues that President Obama officially acknowledged the existence of such line-item budget records when, in a speech about the Iran nuclear deal, he mentioned that the United States had provided unprecedented "American military and intelligence assistance to Israel." To be sure, the CIA cannot issue a *Glomar* response if a government official has officially acknowledged the existence or nonexistence of the specific records at issue. But that is not what happened here. Confirming the existence of American "intelligence assistance" to Israel is not the same as confirming (or denying) the existence of specific line items in the intelligence budget supporting Israel – and the D.C. Circuit demands exactitude in order for an official acknowledgement argument to succeed. Plaintiff's various other objections are similarly unavailing. Accordingly, the CIA's response to Plaintiff's FOIA request was entirely proper, and the Agency respectfully asks this Court to enter summary judgment in its favor.

**ARGUMENT**

**I.      The CIA Properly Made and Supported Its *Glomar* Response.**

To justify its invocation of a FOIA exemption, the CIA must provide a statement "contain[ing] [a] reasonable specificity of detail" and explaining why the sought information fell within one of FOIA's exemption categories. *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). In its declaration, the CIA did just that, describing why its *Glomar* response was independently and properly justified under both FOIA exemptions 1 and 3. *See* Defs.' Mem in Supp. of Mot. Summ. J. (Def.'s Mem."), at 6–16, ECF No. 12-1; Decl. of Antoinette B. Shiner, Info. Review Officer For The Litig. Review Office, Central Intelligence Agency ("Decl."), ECF No. 12-2. In his opposition brief, Plaintiff does not challenge the applicability of these exemptions or the adequacy or specificity of the Agency's declaration. *See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 13-1. As such, this Court may consider any objections along these lines to be waived. *See, e.g.*, *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Judicial Watch, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 256 n.5 (D.D.C. 2014) (treating challenges to the sufficiency of the agency's FOIA supporting documentations not raised in the opposition as waived).

As described in detail in the CIA's opening brief, its declaration and D.C. Circuit case law support the CIA's *Glomar* response. Under Exemption 1, the CIA determined – as it was required to do under Executive Order No. 13,526 – that the "disclosure of the existence or nonexistence of [line item budget entries supporting Israel] could be expected to result in damage

to national security" in three ways. Decl. ¶ 23. In particular, such disclosure (1) would reveal information about the "intelligence activities, priorities, vulnerabilities, and strengths" of the United States Government, *id.* ¶ 28, (2) would "damage relationships between the U.S. Government and foreign governments," by making public the CIA's assistance and relationships with those governments and indicating that "the U.S. Government is unable or unwilling to protect the secrecy of such relationships," *id.* ¶ 29, and (3) would, if the CIA was forced to reply to all FOIA requests for intelligence budget line items, "reveal[] piece – by piece – intelligence community resources, activities and priorities," *id.* ¶ 30. All of these explanations are well-established in the case law of this Circuit.[1] The CIA also explained how intelligence expenditure information constituted intelligence sources and methods. Such information is, in keeping with

---

[1] For intelligence priorities, *compare, e.g.*, *Leopold v. C.I.A.*, 106 F. Supp. 3d 51, 58 (D.D.C. 2015) (finding as adequate a declaration that explained that disclosing intelligence expenditures "would reveal the resources available to the Intelligence Community and the intelligence priorities of the U.S. Government"), *with* Decl. ¶ 28 ("Combined with other information already available to foreign intelligence services and the public, the release of intelligence budget information would tend to reveal intelligence activities, priorities, vulnerabilities, and strengths").

For the impact on foreign relationships, *compare, e.g.*, *Canning v. Dep't of State*, No. 13-cv-831 (RDM), 2015 WL 5776005, at *9 (D.D.C. Sept. 30, 2015) ("[t]he disclosure of the information in this document at this time could have the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security"), *with* Decl. ¶ 29 ("Disclosure of the Agency's relationship with or assistance to a specific country would suggest to other foreign liaison services and foreign government officials that have relationships with the Agency that the U.S. Government is unable or unwilling to protect the secrecy of such relationships and assistance.").

Finally, for the impact on source protection caused by forcing an agency to confirm or deny the existence of a relationship, *compare e.g.*, *Love v. U.S. Dep't of Justice*, No. 13-cv-1303 (TSC) 2015 WL 5063166, at *4 (D.D.C. Aug. 26, 2015) ("Denying the status of an individual as a confidential source would allow the requestor, through the process of elimination, to uncover the identity of any confidential source"), *with* Decl. ¶ 30 ("The potential damage to national security would be magnified many times over if the CIA were to respond to all FOIA requests for information on intelligence budget line items, thereby revealing – piece by piece – intelligence community resources, activities, and priorities.).

D.C. Circuit case law, also protected from disclosure under Exemption 3 pursuant to the National Security Act of 1947. *See* Def.'s Mem. at 12–16.

## II. Plaintiff's Objections Are Unavailing.

In his opposition brief, Plaintiff levels a number of attacks against the CIA, including claims that (1) President Obama has officially acknowledged the existence of line items in the intelligence budget supporting Israel; (2) the CIA should have submitted a declaration from the President; (3) *in camera* review is appropriate; (4) *Aftergood v. CIA*, 355 F. Supp. 2d 557, 562 (D.D.C. 2005) requires the CIA to disclose the information in question; and (5) disclosure of the sought information would be in the public interest. None of these arguments hit the mark.

### A. President Obama Has Not Disclosed the Fact of the Existence or Non-Existence of Line-Items in the Intelligence Budget Supporting Israel.

Plaintiff stakes his opposition to the CIA's motion for summary judgment on the claim that President Obama has confirmed the existence of line-items in the intelligence budget supporting Israel. But President Obama never said that. Instead, he made the much more general point that the United States had provided unprecedented "American military and intelligence assistance" to Israel. THE WHITE HOUSE, *Remarks by the President on the Iran Nuclear Deal*, (Aug. 5, 2015), https://www.whitehouse.gov/the-press-office/2015/08/05/remarks-president-iran-nuclear-deal [hereinafter "President's Remarks"]. That is not enough to overcome the CIA's properly invoked *Glomar* response. In order to claim the "official acknowledgment" exception to the *Glomar* doctrine, the D.C. Circuit has an "insistence on exactitude." *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007). The plaintiff must show that the "specific information" he requests "matches" information already officially acknowledged. *Moore v. C.I.A.*, 666 F.3d 1330, 1333-34 (D.C. Cir. 2011). "Similar information" does not count. *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 621 (D.C. Cir. 2011). Here, President

4

Obama's general reference to American "intelligence assistance" does not confirm "the existence *vel non*" of line-items in the intelligence budget supporting Israel, the specific information at issue in Plaintiff's FOIA request. *Am. Civil Liberties Union v. C.I.A*, 710 F.3d 422, 427 (D.C. Cir. 2013). And without that precise match, Plaintiff's claim must fail.

As discussed in more detail in the CIA's opening brief, the "official acknowledgment" principle allows a plaintiff to overcome an agency's *Glomar* response if he meets three stringent criteria. *See* Def.'s Mem. at 16-19. "First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure. *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990)) (alterations in original). For official acknowledgment purposes, a disclosure by the President constitutes a disclosure by the CIA. *See Am. Civil Liberties Union*, 710 F.3d at 429 n.7.

But no such acknowledgement is present here. Plaintiff points to a single clause in a single sentence in a single speech by President Obama. There, in the context of the Iran nuclear deal, he said:

> But the fact is, *partly due to American military and intelligence assistance, which my administration has provided at unprecedented levels*, Israel can defend itself from any conventional danger – whether from Iran directly or from its proxies.

President's Remarks (emphasis added). General references to "intelligence assistance" do not "precisely track[] or duplicate[]" Plaintiff's request, *Am. Civil Liberties Union v. CIA*, 109 F. Supp. 3d 220, 242 (D.D.C. 2015), for "a copy of the intelligence budget that pertains to line items supporting Israel," Compl. Ex. 1, ECF No 1. In his speech, President Obama was silent about whether that intelligence assistance involved financial or budgetary support, as opposed to,

5

for example, intelligence sharing or other non-monetary assistance. And he certainly did not say that this assistance involved line-items in the CIA's intelligence budget – indeed, he never mentioned any specific intelligence agency in the entire speech. Nor did he reveal what any such line-items, should they exist, are for, or their amounts – all information that Plaintiff's FOIA requests seeks. In short, President Obama's speech and Plaintiff's request are not congruent; the former is at a different (and much higher) level of generality than the latter.

As this Circuit's case law makes clear, the precise equivalence requirement is strictly defined. In *American Civil Liberties Union v. Central Intelligence Agency*, 109 F. Supp. 3d 220 (D.D.C. 2005), for example, the requestor sought "granular" information about the identity of individuals killed in drone strikes. *Id.* at 240. Even though the U.S. government had released the name of three individuals who were killed in "counterterrorism operations," the court held that that was not specific enough: "statements about counterterrorism operations plainly do not 'match' the specific information [the plaintiff] sought about drone strikes." *Id.* at 240-41. "Prior disclosure of similar subject matter, without more, misses the mark." *Id.* at 242. Similarly, a presidential statement that the intelligence community "is looking at phone numbers and durations of calls" cannot be used to support a claim that the intelligence community was looking at "this information for everyone, or even for specific subgroups." *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 57 (D.D.C. 2015); *see also id.* at 56 (release of information that "provide[s] only the most general outline" of an intelligence effort does not waive right to withhold documents giving "a far more precise idea of that effort because withheld information must have 'already been specifically revealed to the public.'") (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)). Only when the exact information sought has already been released is a *Glomar* response improper. *See, e.g.*, *Wolf*, 473 F.3d at 379 (concluding that

the CIA had "officially acknowledged" the existence of records about Jorge Eliecer Gaitan when, in testimony to Congress, the CIA Director had referred to records that specifically referenced Gaitan). Here, claims of "intelligence assistance" to Israel are simply not "as specific" as information confirming the existence of intelligence budget line items supporting Israel. *Id.* at 378.

Implicitly conceding that President Obama's statement was not a direct acknowledgment of the existence or non-existence of line-item intelligence budget entries supporting Israel, Plaintiff infers from the President's speech that such entries must exist. For example, he asserts:

> If the president publically states that unprecedented levels of military and intelligence support are being provided to Israel, he has *de facto* declassified the existence of intelligence budget line items for support destined to Israel – because CIA is the agency responsible for coordinating that type of activity. CIA cannot credibly deny that budget line items exist, because the U.S. federal government is a budget-oriented entity.

Pl.'s Opp'n at 5; *see also id.* at 6 ("If the President states that there is 'unprecedented' intelligence support being provided it logically follows, given the current configuration of the U.S. federal government that CIA has the information requested."); *id.* at 8 ("[T]he CIA's intelligence support to Israel must be massive and amount to billions of dollars."). But these claims merely stack supposition on top of supposition: that the CIA is responsible for coordinating intelligence assistance to Israel; that such assistance takes the form of a budgeted-for activity; and that such budgeted-for activity is in the form of a line-item. As this Circuit has made crystal clear, however, "[a]n agency's official acknowledgment of information by prior disclosure, however, cannot be based on mere public speculation, no matter how widespread." *Wolf*, 473 F.3d at 378. Nor may "[l]ogical dedications . . . substitute for official acknowledgments." *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 333 (D.D.C. 2015); *see also Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010) (same), *aff'd*

*sub nom. Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011).   Here, Plaintiff has no evidence of his claim beyond speculation – and speculation does not constitute official acknowledgement.

### B. The CIA Is Not Required To Submit an Affidavit From the President of the United States.

Several times in his opposition, Plaintiff suggests that the CIA should have submitted a *Glomar* affidavit from President Obama.  *See* Pl.'s Opp'n at 4 ("However, rather than exploring, or even more convincingly, submitting actual affidavits from the Executive ([i.e.], the U.S. President) the defendant submits low ranking agency official affidavits generically alleging potential harm to national security and advancing theoretical cases of such harm."); *id.* at 9 ("The Central Intelligence Agency has filed no proof of any interaction with its higher declassification authority, the U.S. President, in upholding its invocation of FOIA exemptions.").  But that is not the law.  Rather, the declarant – as the D.C. Circuit has held – need only be an original classification authority as defined under Executive Order No. 13,526.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 944 (D.C. Cir. 2013); *Bigwood v. U.S. Dep't of Def.*, No. 11-cv-0602 (KBJ), 2015 WL 5675769, at *19 (D.D.C. Sept. 25, 2015); *see also Elec. Privacy Info. Cntr. v. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 60 (D.D.C. 2015) (in light of the "presumption of good faith" an affidavit stating that the signatory has original classification authority is enough to establish declarant's classification authority).  The President need not personally participate in the classification decision.  *See Canning v. Dep't of State*, No. 13-cv-831 (RDM), 2015 WL 5776005, at *9 (D.D.C. Sept. 25, 2015) ("Section 1.3 [of E.O. 13,526] authorizes officials [including the President] to 'delegate' original classification authority *without additionally requiring that those officials personally participate in or direct each exercise of that classification authority*.") (emphasis added).

Here, it is undisputed that Ms. Shiner, the Declarant, has original classification authority. *See* Decl. ¶ 3. Under Executive Order No. 13,256, Ms. Shiner has the authority to classify the fact of the existence or non-existence of any intelligence budget line items supporting Israel; no Presidential involvement is required. Nor does the fact that a Presidential statement is at issue in Plaintiff's "official acknowledgment" claim change the affiant status analysis. As discussed above (and in the CIA's opening brief), an official acknowledgement claim rises or falls based on whether the plaintiff has put forward "specific information . . . [that is] already [] in the public domain by official disclosure." *Wolf*, 473 F.3d at 378. The analysis is entirely based on comparing the public, official information to that sought by the requester; the individual who allegedly officially disclosed the information is neither required nor expected to make any declaration.[2] *See, e.g., id.* at 379-80 (considering official acknowledgement claim by looking at text of disclosure); *Valfells*, 717 F. Supp. 2d at 117-18 (same).

### C. In Light Of the CIA's Proper *Glomar* Response, *In Camera* Review Is Not Appropriate.

In passing, Plaintiff suggests that this Court should "obtain and review *in camera* the requested information." Pl.'s Opp'n at 9-10. *In camera* review is not proper here. The D.C. Circuit has "made clear that '[w]hen the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate.'" *Larson*, 565 F.3d at 870 (quoting *Hayden v. NSA/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (bracket omitted)). That is especially true in national security cases, where "[*i*]*n camera* inspection is practically a last resort." *Id.* (quoting *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977)). Moreover, *in*

---

[2] To the extent that Plaintiff criticizes Ms. Shiner's declaration for "alleging potential harm to national security and advancing theoretical cases of such harm," Pl.'s Opp'n. at 4, the D.C. Circuit has repeatedly recognized that "any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent." *Judicial Watch*, 715 F.3d at 943 (quoting *Am. Civil Liberties Union*, 628 F.3d at 624); *Wolf*, 473 F.3d at 374.

*camera* review is particularly unhelpful in a *Glomar* case, where the crux of the dispute rests not on any particular documents, which may or may not exist, but on whether the fact of their existence is itself properly classified.  *See Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) ("Another factor that plays into the calculus [of whether *in camera* review is appropriate] is the nature of the parties' dispute, because '*in camera* review is of little help when the dispute centers not on the information contained in the documents but on the parties differing interpretations as to whether the exemption applies to such information.'"  (quoting *Cater v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987)).  Here, affidavits alone – not any underlying documents which may or may not exist – justify the CIA's *Glomar* response.  *See Wolf*, 473 F.3d at 375.

> D. *Aftergood* Does Not Justify The Release of The Classified Intelligence Budget Information At Issue Here.

As discussed in the CIA's opening brief, courts within the D.C. Circuit have long held that intelligence budget information is properly exempt from FOIA.  *See* Def.'s Mem. at 14-15.  One of those decisions was *Aftergood v. C.I.A.*, 355 F. Supp. 2d 557 (D.D.C. 2005).  There, the court held the "aggregate intelligence budget relates to intelligence sources and methods," and as such need not be disclosed under FOIA.  *Id.* at 562 (capital letters omitted).  *Aftergood* also recognized that because the CIA had "inadvertently released the aggregate intelligence budget for 1963," it had officially acknowledged the top-line budget amount for that year.  *Id.* at 563-64.  Importantly, however, the court was clear that this acknowledgment only went as far as that specific year.  Citing the D.C. Circuit's decision in *Fitzgibbon v. CIA.*, 911 F.2d 755, 765 (D.C. Cir. 1990), the court concluded "that a waiver of protection of information due to disclosure did not waive an agency's ability to withhold similar information concerning earlier and later periods of time." *Aftergood*, 355 F. Supp. 2d at 564.

Plaintiff focuses on this decision, claiming that "[t]he lessons from [*Aftergood*] are that such [intelligence budget] numbers can be – and in fact were – released because the public interest outweighed CIA theories of grave harm to national security advanced by its low level officials." Pl.'s Opp'n. at 8. This is simply wrong. *Aftergood*'s lesson is just the opposite: intelligence budget information is properly classified and exempt from release unless and until it has been officially acknowledged. Here, contrary to Plaintiff's assertions, that acknowledgment never occurred.

### E. Plaintiff's Unsupported Assertion That Disclosure Would Be In the "Public Interest" Cannot Justify Release.

Finally, several times throughout his opposition brief and opposition to Ms. Shiner's Declaration, Plaintiff argues that because the information he seeks is "a public interest matter," it should be released. Pl.'s Opp'n at 6, 8; *see also* Pl.'s Opp'n Decl. Antoinette B. Shiner ("Opp'n Decl.") ¶¶ 13, 15, 29, 30, ECF No. 13-2. But it is not this Court's role to independently determine whether the purported public interest outweighs the harms of disclosure. Instead:

> If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . *the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.*

*Larson*, 565 F.3d at 865 (emphasis added); *see also id.* ("The judiciary 'is in an extremely poor position to second-guess' the predictive judgments made by the government's intelligence agencies regarding questions such as whether a country's changed political climate has yet neutralized the risk of harm to national security posed by disclosing [classified information].") (quoting *Cntr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003)). Here, Ms. Shiner's Declaration is sufficiently detailed and logical, thereby justifying the CIA's *Glomar* response.

## CONCLUSION

For the foregoing reasons, as well as those set out in the Defendant's opening brief, this Court should grant Defendant's motion for summary judgment.

| | |
|---|---|
| April 1, 2016 | Respectfully Submitted, |
| | BENJAMIN C. MIZER<br>Principal Deputy Assistant Attorney General,<br>Civil Division |
| | CHANNING D. PHILLIPS<br>United States Attorney |
| | MARCIA BERMAN<br>Assistant Director,<br>Federal Programs Branch |
| *By:* | /s/ *Joseph E. Borson*<br>JOSEPH E. BORSON<br>Virginia Bar No. 85519<br>Trial Attorney<br>U.S. Department of Justice,<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Avenue, NW<br>Washington, D.C. 20530<br>Telephone:   (202) 514-1944<br>Facsimile:   (202) 616-8460<br>E-mail:         joseph.borson@usdoj.gov |
| | *Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on April 1, 2016, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

                /s/ *Joseph E. Borson*
                JOSEPH E. BORSON