UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANT F. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-01431 (TSC) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Grant F. Smith, proceeding *pro se*, challenges the withholding by Defendant Central Intelligence Agency ("CIA") of certain information in response to Plaintiff's Freedom of Information Act ("FOIA") request. The CIA issued a *Glomar* response and withheld the documents under FOIA Exemptions 1 and 3, 5 U.S.C. § 552(b), and then moved for summary judgment. For the reasons set forth below, Defendant's motion will be DENIED.

**I.    BACKGROUND**

Plaintiff is a public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc. (Compl. ¶ 4). On March 19, 2015, he filed a FOIA request with the CIA for a copy of its intelligence budget, specifically, line items supporting Israel from 1990 through 2015. (Ex. 1; Compl. ¶ 1). Smith originally sought the information "for use in vital public interest research into how nuclear weapons related know-how, material and technology have been unlawfully diverted into Israeli entities conducting clandestine nuclear weapons-related research and development." (Compl. ¶ 4). On April 15, 2015, the CIA issued a *Glomar*

response[1] that it could neither confirm nor deny the existence or nonexistence of any responsive documents, pursuant to FOIA Exemptions 1 and 3.  (*Id.* ¶ 24).  On May 5, Smith filed an administrative appeal of the denial but the CIA failed to respond within 20 working days.  (Ex. 3; Compl. ¶¶ 27, 31).  Smith ultimately filed a complaint in this court on September 2, 2015.  (Compl. ¶ 1).

## II.     LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "FOIA cases typically and appropriately are decided on motions for summary judgment."  *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (citation omitted).  The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).  The burden is on the government agency to show that nondisclosed, requested material falls within a stated exemption.  *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).  In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations.  *See, e.g.*,

---

[1] A *Glomar* response is "[a] response to a FOIA request, in which an agency states that it can 'neither confirm nor deny' the existence of responsive records, [named] after a case concerning a FOIA request for records relating to an underwater sea craft called the 'Glomar Explorer.'" *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 n.2 (D.C. Cir. 1995) (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)).

*ACLU v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 838 (D.C. Cir. 2001).  In *ACLU,* the D.C. Circuit wrote:

> If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone.

*ACLU,* 628 F.3d at 619.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* (quoting *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)) (internal quotation marks omitted).  However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption."  *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (internal quotation marks omitted) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

**III.   ANALYSIS**

A *Glomar* response permits an agency to "refuse to confirm the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  Nevertheless, a "plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records" within the public domain.  *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013).  If an agency has "officially acknowledged the existence of the record, the agency can no longer use a *Glomar* response."  *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  This Circuit has clarified that in the *Glomar* context, it is the "existence *vel non* of any records responsive to a

FOIA request," rather than the content of the records, that is the focus of the inquiry. *ACLU*, 710 F.3d at 427.

A court's rejection of an agency's *Glomar* response does not mandate subsequent disclosure of the records themselves, but requires the agency to process the records in the usual manner required by FOIA; the agency must inform the requester of the number of records and either release the records or justify its withholding pursuant to FOIA's exemptions. *See ACLU v. CIA*, 109 F. Supp. 3d 220, 225 (D.D.C. 2015) (after remand in which D.C. Circuit held *Glomar* response inappropriate, district court upheld CIA's release of one redacted memorandum, withholding of eleven other memoranda, and withholding of thousands of classified intelligence products that constituted records responsive to ACLU's request).

In order to rebut a *Glomar* response, the requester must point to an official prior disclosure that "establishes the *existence* (or not) of records responsive to the FOIA request." *Wolf*, 473 F.3d at 379. The law concerning how to overcome an agency *Glomar* response arose out of the "official acknowledgment" exception to FOIA's exemptions, which required the requester to meet three stringent criteria: (1) "the information requested must be as specific as the information previously released," (2) "the information requested must match the information previously disclosed," and (3) "the information requested must already have been made public through an official and documented disclosure." *Id.* at 378 (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). However, the inquiry is not identical. The *Wolf* court, which addressed the official acknowledgment standard in the *Glomar* context for the first time, explained that where the official acknowledgment or prior disclosure demonstrates the existence of the records the requester seeks, "the prior disclosure necessarily matches both the information at issue—the existence of records—and the specific request for that information." *Id.* at 379.

*Fitzgibbon*'s matching and specificity criteria, then, are not applicable in the *Glomar* context; in such cases, the court must analyze only whether the prior disclosure acknowledges the existence of the records sought.

Plaintiff contends a *Glomar* response is inappropriate here, since two public statements concerning intelligence budgets constitute public acknowledgment of the existence of the records he seeks. First, he points to former Director of Central Intelligence John Deutch's 1996 Congressional testimony that "disclosure of the annual amount appropriated for intelligence purposes will inform the public and not, in itself, harm intelligence activities." (Compl. ¶ 5). Although Plaintiff has not provided any citation for the quotation, the court will assume its truth for purposes of summary judgment. Even assuming the purported testimony exists, the court finds it does not "match" the information Plaintiff seeks; Deutch did not refer to Israel or confirm the existence of CIA budget line items supporting Israel or general CIA support for Israel. Deutch's statement, assuming he made it, does not meet the public-acknowledgement criteria necessary to overcome the CIA's *Glomar* response.

Second, Plaintiff points to a statement by former President Barack Obama during an address to American University in August 2015, in which he said, "the fact is, partly due to American military and intelligence assistance, which my administration has provided at unprecedented levels, Israel can defend itself against any conventional danger." (*Id.* ¶ 26).[2] The CIA contends that President Obama's statement does not reveal whether there are budget line items reflecting intelligence support to Israel, or which agency provided such support. The court disagrees, finding that the inferences available from President Obama's statement are (1) that the

---

[2] The text of the address is available at https://obamawhitehouse.archives.gov/the-press-office/2015/08/05/remarks-president-iran-nuclear-deal.

CIA provides intelligence support to Israel, and (2) that it therefore must have some means of appropriating funds to do so, meaning that the budget line items must exist.

The CIA claims that President Obama's statement "was silent about whether [the] intelligence assistance involved financial or budgetary support, as opposed to, for example, intelligence sharing or other non-monetary assistance." (Reply at 5-6). The CIA also argues that President Obama's statement did not mention line items, nor refer to "any specific intelligence agency," or reveal "what any such line-items, should they exist, are for, or their amounts," and that the statement was at a "higher level of generality" than Plaintiff's request. (*Id.* at 6). The court agrees that President Obama may have referred to non-monetary assistance, but even non-monetary assistance has to be budgeted for. Information sharing, training, or anything else that might constitute "intelligence assistance" other than direct financial support would cost the CIA money to provide or perform. The CIA must have a budget line item for expenses that it incurs; even if the budget is secret or classified or subject to FOIA's exemptions, it must exist in order for the CIA to operate. The court is not aware of, nor has the CIA pointed to, other agencies that might provide intelligence support abroad. The CIA claims that "[c]onfirming the existence of American 'intelligence assistance' to Israel is not the same as confirming (or denying) the existence of specific line items in the intelligence budget supporting Israel," (*id*. at 1), but the court disagrees. The CIA's reference to "the intelligence budget" refutes its suggestion that some entity other than the CIA might be responsible for the noted "intelligence assistance," as it implicitly acknowledges that there is a definitive "intelligence budget" and it is the CIA's.

The court finds this case falls within the ambit of *ACLU v. CIA,* in which the D.C. Circuit rejected the CIA's *Glomar* response to a request for records in its possession pertaining to the use of drones for targeted killings. 710 F.3d at 425. Noting that the information the CIA sought

6

to protect was "whether the *CIA itself* was involved in, or interested in," drone strikes, the CIA's refusal to acknowledge whether it had any records at all pertaining to drone strikes was unwarranted, given official statements demonstrating "that the Agency 'at least has an intelligence interest'" in the strikes.  *Id.* at 428-29.  The Court found that official acknowledgments included the President's statement in response to a question about drones that "we are able to pinpoint-strike an al Qaeda operative in a place where the capacities of th[e] military in that country may not be able to get them;" then-Assistant to the President for Homeland Security and Counterterrorism John Brennan's statement that " the United States Government conducts targeted strikes against specific al-Qaida terrorists;" Brennan's statement that drone strikes are coordinated with "the full range of our intelligence capabilities;" then-Director of the CIA Leon Panetta's remarks concerning drone strikes that "these operations have been very effective;" as well as Panetta's comments on the "precision of targeted drone strikes, the level of collateral damage they cause, and their usefulness in comparison to other weapons and tactics."  *Id.* at 429-31.  The statements made it "neither 'logical' nor 'plausible' to maintain that the [CIA] does not have any documents relating to drones."  *Id*. at 431.

Similarly, in this case, it is neither "neither logical nor plausible" that the CIA does not have budget line items related to intelligence assistance for Israel.  The CIA's citations to *Moore*, 666 F.3d 1330; *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 621 (D.C. Cir. 2011); and *ACLU v. CIA*, 109 F. Supp. 3d at 242 are inapposite; those cases involve the official acknowledgment standard as applied to FOIA exemptions generally.  The court finds that in the *Glomar* context, President Obama's statement is sufficient to acknowledge the existence of the records sought.  The match between Plaintiff's request and President Obama's statement, although the statement did not consist of the specific words "CIA" or "budget line items," is as close as the match in

7

*ACLU v. CIA*. The court distinguishes this case from *Competitive Enterprises Institute v. NSA*, also cited by the CIA, where a district court found the official acknowledgement that the NSA has telephony metadata did not confirm or deny the existence of telephone, email, or text message metadata about specific individuals or subgroups of people. 78 F. Supp. 3d 45, 57-58 (D.D.C. 2015). In that case, the NSA's acknowledgment that it possessed metadata did not confirm that it possessed metadata about every single individual with a cell phone in the United States, nor email or text message data at all. Here however, President Obama's statement about United States intelligence assistance to Israel does confirm that the CIA has items in its budget pertaining to assistance to Israel.

Because the court finds the CIA's *Glomar* response unwarranted because of President Obama's statement, which constituted an official acknowledgement of the existence of the records sought, it will not reach whether, absent the official acknowledgment, Exemptions 1 and 3 would properly justify a *Glomar* response.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be DENIED. A corresponding order will issue separately.

Dated: March 30, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge
