**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GRANT F. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-cv-1431 (TSC) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
|  | ) | |

## ORDER

Defendant Central Intelligence Agency has moved for reconsideration of the court's denial of its motion for summary judgment in this FOIA case. Upon consideration of the briefing and the entire record herein, for the reasons stated below, Defendant's Motion for Reconsideration is DENIED and Defendant's Motion for Summary Judgement is DENIED.

## I.    BACKGROUND

Plaintiff Grant F. Smith is a public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc. (Compl. ¶ 4). On March 19, 2015, he filed a FOIA request with Defendant for a copy of "the intelligence budget," specifically, line items supporting Israel from 1990 through 2015. (Ex.1; Compl. ¶ 1). Smith originally sought the information "for use in vital public interest research into how nuclear weapons related know-how, material and technology have been unlawfully diverted into Israeli entities conducting clandestine and nuclear weapons-related research and development." (Compl. ¶ 4). On April 15, 2015, the CIA issued a *Glomar* response[1] that it could neither confirm nor deny the existence

---

[1] A *Glomar* response is "[a] response to a FOIA request, in which an agency states that it can 'neither confirm nor deny' the existence of responsive records, [named] after a case concerning a

of any responsive documents, pursuant to FOIA exemptions 1 and 3.  (*Id.* ¶ 24).  On May 5, 2015, Smith filed an administrative appeal of the denial, but the CIA did not respond within 20 working days.  (Ex. 3; Compl. ¶¶ 27, 31).  Smith ultimately filed a complaint in this court on September 2, 2015.  (Compl. ¶ 1).  The CIA filed a Motion for Summary Judgement based on its *Glomar* response, and Smith contested the *Glomar* response, arguing that a statement by President Obama—in which he said, "the fact is, partly due to American military and intelligence assistance, which my administration has provided at unprecedented levels, Israel can defend itself against any conventional danger"—constituted an official acknowledgement of the existence of the records he requested.  (Compl. ¶ 26).[2]

On March 30, 2017, the court denied Defendant's Motion for Summary Judgement, finding that the CIA's *Glomar* response was unwarranted because President Obama's statement constituted official acknowledgement of the existence of the records Smith sought.  (Mem. Op. at 6, ECF No.16).  The court ordered the CIA to process the FOIA request, inform Plaintiff of the number of records responsive to the request, and either release the records or identify exemptions that form the basis of withholding the records.  (Order, ECF No. 17).

The CIA has asked this court to reconsider its denial of summary judgment, arguing that the decision relied on several "factual misimpressions."  (Def. Mot. at 1, ECF No. 18).  The CIA refuted two inferences the court made from President Obama's statement: (1) that the CIA provides intelligence support to Israel, and (2) that it therefore must have some means of

---

FOIA request for records relating to an underwater sea craft called the 'Glomar Explorer.'" *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 n.2 (D.C. Cir. 1995) (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)).

[2] The statement is available at https://obamawhitehouse.archives.gov/the-press-office/2015/08/05/remarks-president-iran-nuclear-deal.

appropriating funds to do so, meaning that the budget line items must exist. (*Id.*). The CIA corrected these "factual misimpressions" by highlighting that there are 17 intelligence agencies able to provide intelligence assistance, and therefore it does not necessarily follow from President Obama's statement that *the CIA* provides intelligence assistance to Israel; and that because the intelligence community does not have a single intelligence budget, the CIA cannot be assumed to have budget line items pertaining to support for Israel. (*Id.* at 1-2). Smith responded that the CIA's role as the "central coordinator" of the US Intelligence Community between 1990 and 2004 makes it probable that the CIA has the documents he seeks. (ECF No. 22).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), a court may reconsider its decisions "at any time before the entry of a judgement adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under Rule 54(b), a court may grant reconsideration "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, *Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). For example, a court may reconsider an opinion when a court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C 2005). A court "has broad discretion to consider whether relief is 'necessary under the relevant circumstances.'" *North v. U.S. Dep't of Justice*, 892 F. Supp. 2d 297, 299 (D.D.C. 2012).

### III.    ANALYSIS

A *Glomar* response permits an agency to "refuse to confirm the existence of records where to answer the FOIA inquiry would cause harm cognizable under a [] FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  However, a plaintiff can overcome a *Glomar* response by demonstrating that the agency "has already disclosed the fact of the existence (or nonexistence) of responsive records" within the public domain.  *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013).  If the agency has "officially acknowledged the existence of the record, the agency can no longer use a *Glomar* response."  *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  In the *Glomar* context, it is the "existence *vel non* of any records responsive to a FOIA request," not the content of the records, that is the focus of the analysis.  *ACLU,* 710 F.3d at 427.

However, a court's rejection of an agency's *Glomar* response only requires the agency to process the records; the rejection does not require disclosure of the records themselves.  *See ACLU v. CIA*, 109 F. Supp. 3d 220, 225 (D.D.C 2015) (after remand in which the court found *Glomar* response inappropriate, the court subsequently upheld release of one document and withholding of thousands of documents and classified intelligence which constituted responsive records).  An official acknowledgement is a public statement which "necessarily matches both the information at issue—the existence of records—and the specific request for that information."  *Wolf*, 473 F.3d at 379.

Here, this court's original refusal to permit the *Glomar* response was based on its interpretation of President Obama's statement about intelligence support to Israel and its understanding that such intelligence support, if it exists, must have been provided by the CIA, or the CIA must have some connection to it.  The CIA has since indicated that other intelligence

agencies may provide that support, rendering the *Glomar* response appropriate to the extent that Smith's request was for the CIA's own budget line items pertaining to Israel. The CIA explains that President Obama's reference to "intelligence assistance" to Israel may not refer to activities conducted by the CIA, because "there are in fact multiple intelligence agencies that provide intelligence support abroad." (Def. Mot. at 4). It argues that President Obama's statement cannot be read to confirm (or deny) that President Obama was referring to the CIA, instead of one of the other sixteen intelligence agencies, including the Office of the Director of National Intelligence, the National Security Agency, and the Office of Intelligence and Analysis of Homeland Security. 50 U.S.C. § 3003(4).

The court recognizes that President Obama did not explicitly confirm or deny that the CIA itself provides intelligence assistance to Israel. But Plaintiff's specific request was for "the intelligence budget" line items pertaining to support for Israel. President Obama's statement, while perhaps not an official acknowledgment that the CIA is the actual intelligence agency that provides support to Israel, is an acknowledgement that some intelligence agency does so, and therefore that intelligence agency would have budget line items.

Courts "'should not be ignorant as judges of what [they] know as men' and women." *ACLU*, 710 F.3d at 431 (quoting *Watts v. Indiana*, 338 U.S. 49, 52 (1949)). Because the CIA is the *central* agency for intelligence, the court can reasonably assume that the CIA would have some involvement, or at least some intelligence interest, in the provision of intelligence assistance to a foreign nation. President Obama's statement would quite likely preclude a *Glomar* response to a request for "any and all records" pertaining to intelligence assistance to Israel, even if a different intelligence agency actually provides the assistance. This conclusion comports with the D.C. Circuit's holding in *ACLU* regarding a request for all records from the

CIA pertaining to drone strikes. The Court found that the public acknowledgement of the existence of drone strikes precluded a *Glomar* response not because it acknowledged the CIA operated drones, but because it elicited the inference that the CIA "at least ha[d] an intelligence interest" in drone strikes. 710 F.3d at 429. As long as the CIA had such an interest, the court concluded, it would have at least some records pertaining to drone strikes and the fact that those records existed had been publicly acknowledged. *See id.*

Here, Smith did not request any and all records related to intelligence assistance to Israel; he sought only budget line items. The question before this court is therefore different from that in *ACLU*. While the court cannot infer from the President's statement that the CIA has budget line items that support intelligence assistance for Israel, the statement implies that some intelligence agency or government entity does have budget line items related to such intelligence assistance, and the court must determine whether the CIA has a relationship with that agency that would require production of the budget information under FOIA.

An agency is only obligated to produce agency records, which are records that an agency "creates, or obtains, and records under its control" at the time of the request. *Lewis v. DOJ*, 867 F. Supp. 2d 1, 12-13 (D.D.C. 2011) (holding that the U.S. Attorney's Office was not obligated to search court files, only the records within their control at the time of the request). Whether the CIA's *Glomar* response is appropriate depends therefore on whether the CIA either creates or obtains and retains under its control the budget line items of other intelligence agencies. If the CIA retains under its control, for example, copies of each intelligence agency's budget, including line items, Plaintiff's request would be for records that the President has officially acknowledged exist and are in the CIA's possession, and the CIA would be required to produce or justify withholding those records.

The CIA claims that President Obama's statement does not confirm or deny the existence of line items that support Israel in the CIA's own budget. (Def. Mot. at 7). It asserts that the U.S. intelligence budget is divided between the National Intelligence Program (NIP) and the Military Intelligence Program (MIP). (*Id.* at 6). The NIP funds all intelligence community activities, while the MIP funds tactical military operations. (*Id.* at 6-7). The Director of National Intelligence develops the NIP budget, based in part on proposals submitted by the intelligence community. (*Id.*). Therefore, the CIA argues, President Obama's statement did not confirm or deny line items in *the CIA budget* related to intelligence assistance to Israel. (*Id.* at 7).

But the CIA has not addressed whether it routinely creates or has records of other intelligence agencies' budget line items. The Director of National Intelligence develops the NIP budget based on proposals "by the heads of agencies and organizations within the intelligence community" to "develop and determine an annual consolidated National Intelligence Program budget." 50 U.S.C. § 3024(c)(1)(B). The CIA does not create the records. But the court has no information as to whether the CIA obtains the records of those NIP budget line items.

For example, if the CIA retains its own copy of the NIP budget, the budget line items that Smith seeks could constitute CIA agency records. Additionally, a record which an agency accesses as part of its typical responsibilities constitutes an agency record. *U.S. Dep't Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989) (noting that agency records "come into the agency's possession in the legitimate conduct of its official duties."). If the CIA regularly accesses the NIP budget as part of its typical responsibilities, then the *Glomar* response remains inappropriate in light of President Obama's official acknowledgement. Based on the current record, the court cannot grant the CIA's motion for summary judgment because the court does not have sufficient

information to decide whether President Obama's statement constitutes an official

acknowledgment of records that the CIA keeps or regularly accesses.[3]

### IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for reconsideration is hereby

DENIED and Defendant's motion for summary judgment is hereby DENIED, although on

modified grounds. Defendant may supplement the record with additional information and move

again for summary judgment.

Dated: August 23, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[3] Plaintiff opposes reconsideration because most of his FOIA request, from 1990 to 2004, encompasses data from a period in which the CIA was the central coordinator for the intelligence community.  (Response at 1, ECF No. 22).  He cites the *Intelligence Reform and Terrorism Prevention Act of 2004*, which created the position of Director of National Intelligence, to support his claim.  (*Id.* at 2).  Therefore, Plaintiff contends, the CIA possessed budget records at least through 2004.  (*Id.* at 4).   Plaintiff also argues that it is likely that there was a single intelligence budget in the CIA's possession at least through 2004.  (*Id*. at 8).

President Obama's statement referred only to the intelligence community during his administration, which lasted from January 2009 until January 2017.  (Mem. Op. at 6).  The CIA's position within the intelligence community prior to 2009 therefore has no bearing on rebutting the CIA's *Glomar* response, because the President did not speak to the existence of intelligence support for Israel prior to 2009.  The only records at issue here are those that existed during President Obama's tenure, because his statement did not acknowledge the existence of any records pertaining to U.S. intelligence support for Israel created before or after his administration.  Defendant's *Glomar* response is appropriate concerning any records in the CIA's possession pertaining to intelligence assistance for Israel before January 2009 or after January 2017.